UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

BRETT KIMBERLIN,
    Plaintiff,

v.

METROPOLITAN SCHOOL DISTRICT OF
WASHINGTON TOWNSHIP SCHOOLS,
BOARD OF METROPOLITAN SCHOOL DISTRICT
OF WASHINGTON TOWNSHIP SCHOOLS,
    and
NIKKI WOODSON, Superintendent, in her individual and official capacity

    Defendants.

No. DKC 25CV1476
HD

Rcv'd by: _____

## COMPLAINT

Plaintiff Brett Kimberlin files this Complaint for damages against the Metropolitan School of Washington Township Schools (WTPS"), the Board of the Metropolitan School of Washington Township Schools, and its Superintendent Nikki Woodson, for violations of Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"), and the Equal Protection and Due Process Clauses of the Fourteenth Amendment of the Constitution.

### Introduction

**1.** Plaintiff is a resident of Maryland although he was born in Indiana and resided there until 1978. He attended Elementary, Junior High, and High Schools in Indianapolis, in the WTPS school system. His Junior High School was Westlane, where he attended seventh, eighth, and ninth grades. Westlane is now called Westlane Middle School.

1

2. In 1968, when Plaintiff was 14 years old, an eighth grade science teacher named Tharrell Davis, ("Commander Davis"), who was not Plaintiff's teacher, took an unusual interest in Plaintiff while he was in the eighth grade. Over a period of several months, Commander Davis took Plaintiff to his home and elsewhere on multiple occasions after school and on weekends to sexually assault him resulting in physical and emotional injury. On several occasions, there was another younger boy, Tommy, present who was also sexually assaulted by Commander Davis.

3. Plaintiff was concerned about the sexual assaults on Tommy and offered to help get Tommy away from Commander Davis by enlisting assistance from Plaintiff's parents. Tommy told Commander Davis about Plaintiff's offer which resulted in Commander Davis making certain admissions to Plaintiff's mother and agreeing not to have any further contact with Plaintiff.

4. Plaintiff's mother asked a friend to report Commander Davis' conduct to WTPS and to the Indiana State Police. At some point thereafter, in 1969, Commander Davis left the employment of WTPS and Plaintiff believes that he was quietly forced out of his job because of his sexual abuse of Plaintiff and others.

5. The sexual abuse of Plaintiff caused him physical injury at the time of the assaults, and many problems over the past five decades.

6. In December 2023, Plaintiff's mother, shortly before her death, told Plaintiff what Commander Davis had admitted doing to Plaintiff. This caused a flood of repressed memories, nightmares, anxiety, and post traumatic stresses in Plaintiff.

7. On June 27, 2024, Plaintiff wrote to Defendant Nikki Woodson, Superintendent of WTPS, about Commander Davis' sexual abuse and demanded accountability and compensation. At that time, Plaintiff did not know Commander Davis' first name, but did tell her that he taught science in 1968 at Westlane Junior High School and had been in the military. Plaintiff urged her and WTPS to review its records and conduct their own investigation. Title IX requires school officials to investigate reports of sexual abuse by teachers on students.

8. On July 11, 2024, Jonathan Mayes, outside counsel for WTPS, responded that WTPS had turned the matter over to law enforcement for investigation, and WTPS would respond after law enforcement responded. Mr. Mayes told Plaintiff to address all future communications to him.

9. Law enforcement never conducted any investigation or responded to WTPS. Therefore, on January 7, 2025, Plaintiff contacted Mr. Mayes stating that there was no reason to wait for any investigation by law enforcement and asked WTPS to comply with Plaintiff's demand letter.

10. On February 7, 2025, Mr. Mayes, rejected Plaintiff's request as follows:

> As I relayed in my July 11, 2024, letter, the Metropolitan School District of Washington Township provided your June 27, 2024, letter to law enforcement. The District understands that the investigation has not concluded and that no criminal charges have resulted. You also confirmed that the Indiana State Police investigated these allegations decades ago without filing criminal charges. Now, decades later, you expect the District to do more than law enforcement agencies on less facts with less investigatory power. In the end, your request requires the District to rely exclusively on one witness—you—and your most recent iteration of the allegations to resolve serious, 56-year-old claims against an unknown person who may (or may not) have been employed with the District. The District declines to do so.

11. Plaintiff responded to Mr. Mayes in relevant part as follows:

Thank you for your correspondence. To be frank, I am shocked by the tone and the substance of the letter which appears to be a coverup of very serious allegations against a former teacher employed by your client.

First, your client does not need the police to review its employee records from the period in question. Therefore, your statement that the pedophile is an unknown person who may or may not have been employed by your client is astounding. You and your client know or should know who he is and if you don't then you both are negligent.

Second, your response that simply because the State Police did not file criminal charges at the time is justification for doing nothing now is an absolute cop-out that has been used and rejected in hundreds of cases against the Catholic Church, the Boy Scouts, and others. In many of those cases, complaints were made and ignored by the police yet later, when awareness of sexual assaults by adults against kids became widespread and reported in the press, those kids were allowed to proceed against the pedophiles and their employers.

You also assert that since this happened so long ago, there is nothing your client can do. I recently sent you a case against a doctor at IU who committed sexual assault in the 1970s which has been allowed to proceed. Settlements have been made in many other sexual abuse cases going back to the 1950s. https://en.wikipedia.org/wiki/Settlements_and_bankruptcies_in_Catholic_sex_abuse_cases

But most troubling in your letter is your assertion and implication that since I am the only witness with a "latest iteration" that I should not be believed. Are you serious? How many pedophiles have witnesses to their sexual abuse? Indeed, virtually all of the victims of Catholic priests and Boy Scout leaders were the only witnesses. Yet in my case, Commander Davis told my mother at the time and Tommy was a witness and a victim. …

We are living in different times now with the MeToo movement giving victims the courage to come forward when before they stayed silent. However, justifying and minimizing Commander Davis' house of horrors by attempting to discredit and belittle me amounts to secondary victimization.

12. After receiving Mr. Mayes' February 7th response, Plaintiff located the

Westlane Junior High School yearbooks for 1968, 1969 and 1970, and found

Commander Davis' photo as an eighth grade science teacher in 1968 and 1969 and

4

finally learned that his first name was Tharrell. He was no longer employed by WTPS in 1970. After doing this, Plaintiff sent photos of the relevant yearbook pages to Mr. Mayes along with the following response:

> Since you asserted that Commander Davis may not have been employed by your client, I decided to dig up old yearbooks from 1968 and 1969. And lo and behold, there he is and yep, he did teach science. I had a panic attack seeing his sinister face.
>
> So something as simple as looking at a yearbook confirmed his employment yet you and your client did not even take the initiative to do that before writing to me that he might not have been employed by your client. That shows a profound lack of concern and appears that you are more interested in undermining my credibility than accepting responsibility and making amends to me, a victim of Commander Davis.

13.



Cleveland, Arthur Mr.
  Special Education
  Boys' Counseling 7
Cripe, Vernal Mrs.
  English 7,8
Crowe, Richard Mr.
  Social Studies 7,8
Davis, Barbara Miss
  English 8,9
Davis, T. W. Mr.
  Science 7,8

Commander Davis 1968 Westlane Junior High School Yearbook

14.



Crowe, Richard Mr.
  Social Studies 7,8
Davis, Tharrell Mr.
  Science 7
Diener, Ruth Miss
  English 9
Dorrell, Marianne Mrs.
  Algebra 9
  Math 9

Commander Davis 1969 Westlane Junior High School Yearbook

## JURISDICTION AND VENUE

15. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1334 because the matters in controversy arise under the Constitution and

5

the laws of the United States. Specifically, Plaintiff asserts claims under Title IX of the Education Amendments of 1972, 20 U.S.C § 1681 et seq., and the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides within this Court's judicial district and a substantial part of the events and communications giving rise to the claims occurred within this district.

17. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

## PARTIES

18. Plaintiff is a married, male citizen who lives in Maryland.

19. Defendant, Metropolitan School District of Washington Township Schools, is a public educational institution with its campus located in Indianapolis, Indiana. The Metropolitan School District of Washington Township Schools manages and controls various public schools, including Westlane Junior High School, operating within the State of Indiana, County of Marion, City of Indianapolis.

6

20. Defendant, the Board of Metropolitan School District of Washington Township Schools, is the governing body for a public educational institution with its campus located in Indianapolis, Indiana. The Board of Metropolitan School District of Washington Township Schools manages and controls various public schools, including Westlane Junior High School, operating within the State of Indiana, County of Marion, City of Indianapolis.

21. Nikki Woodson is Superintendent of WTPS.

22. WTPS is a recipient of federal financial assistance within the meaning of 20 U.S.C. § 1681(a) and a "person" within the meaning of 42 U.S.C. § 1983.

## APPLICABLE LAW AND POLICY

23. Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a) states: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . . Title IX is implemented through the Code of Federal Regulations. See 34 C.F.R. Part 106. 34 C.F.R. § 106.8(b) provides: . . . A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part." In *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1988), the United States Supreme Court held that a recipient of federal funds violates

7

Title IX, and is subject to a private damages action, where the funding recipient is "deliberately indifferent" to known acts of teacher-on-student sexual harassment.

24. Implemented through the Code of Federal Regulations (See 34 C.F.R. § 106.1), Title IX provides: "A recipient must adopt and publish grievance procedures that provide for the prompt and equitable resolution of student and employee complaints alleging any action that would be prohibited by this part." 34 C.F.R. § 106.8(b).

25. Title IX has been interpreted to require a comprehensive investigation of sexual abuse by a teacher on a student. Such an investigation must be conducted under the version of Title IX at the time of the report not at the time of the incident. WTPS failed to conduct any investigation of Commander Davis' sexual abuse, and even refused to admit that he was a teacher at Westlane Junior High School in 1968.

26. WTPS's treatment of Plaintiff after its refusal to investigate, its *de facto* accusation that he was a liar, and its refusal to investigate because he is the only witness, amounts to secondary victimization and institutional betrayal in violation of Title IX.

27. In 2009, "the Supreme Court held that Title IX does not displace § 1983 claims against school officials because it was not intended to be the exclusive remedy for addressing gender discrimination in schools." *Trentadue v. Redmon*, 619 F.3d 648, 652 (7th Cir. 2010) (citing *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257–58 (2009)). Violating a student's right to be free from school employees'

8

sexual touching and verbal abuse gives rise to a Section 1983 claim for violating the Fourteenth Amendment right to freedom from violations of bodily integrity and personal security.

28. The Fourteenth Amendment to the U.S. Constitution provides in relevant part that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. 42 U.S.C. § 1983 creates a cause of action for damages and injunctive relief against any person who, under color of law, deprives any person of "rights, privileges, or immunities secured by the Constitution and laws," including the Equal Protection Clause. An individual school official violates the Equal Protection Clause and is subject to a claim under § 1983 where the official exhibits deliberate indifference to known sexual harassment. In *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), the U.S. Supreme Court recognized that a municipality may be held liable for damages under § 1983.

29. In the state of Maryland, the Child Victims Act of 2023 allows minors who were sexually assaulted are to file a lawsuit against the accuser and his or her employer at any time.

30. WTPS policies state:

Sexual conduct/relationships with students by Corporation employee or any other adult member of the School Corporation community is prohibited, and any teacher, administrator, coach or other school authority, or staff member who engages in certain prohibited sexual conduct with a student may be disciplined up to and including termination and may also be guilty of the criminal charge of "sexual battery". In the case of a child under fourteen (14) years of age, the person may also be guilty of "child molesting". In the case of a child between the ages of fourteen (14) and sixteen (16), the person may also be guilty of "sexual

misconduct with a minor". The issue of consent is irrelevant in regard to the latter two (2) criminal charges. Any employee accused of sexual relations with a student) will be placed on leave with pay until school administrative proceedings are completed. Proven sexual relationships with a student regardless of the age of the student will initiate the termination process for the employee.

31. WTPS, its Board and its Superintendent not only covered up the sexual abuse by Commander Davis for decades, but they refused to investigate or even acknowledge that Commander Davis was employed by WTPS when the abuse of Plaintiff occurred even though Plaintiff provided his last name, the year of his employment and the subject he taught in school. They prevented and are still preventing Plaintiff from discovering what WTPS knew about Commander Davis' sexual abuse of students, including Plaintiff.

32. Plaintiff learned in 2025 that WTPS has a sordid history of protecting sexual abusing teachers and blaming the students. In *Doe v. Metropolitan School District of Washington Township Schools*, Case 1:22-cv-00870-JRS-DML, (SD Ind), four female students alleged that the WTPS and staff ignored their complaints about a teacher sexually abusing them and other students. The case was settled in 2024 in the students' favor.

33. The general federal rule is that the statute of limitations begins to run when the reasonable person knows, or in the exercise of due diligence should have known, both his injury and the cause of that injury. In other words, absent a statutory directive to the contrary, the "discovery rule" applies, and the clock starts only when a plaintiff knows or should have known certain facts related to their injury. This

contrasts with the occurrence rule, under which a claim accrues at the moment of injury.

34. The discovery rule applies in the § 1983 context and in the Title IX context.

35. WTPS violated Title IX and the Constitution's Due Process and Equal Protection Clauses in 2024 and 2025 by failing to investigate the sexual abuse of WTPS teacher Tharrell Davis and causing secondary victimization of Plaintiff by refusing to even admit that Commander Davis had been employed by WTPS at during the time frame he abused Plaintiff and implying that Plaintiff was a liar.

36. WTPS had actual notice of the sexual abuse of Plaintiff when Plaintiff informed WTPS by letter dated June 27, 2024. That letter was addressed to and received by the Superintendent of WTPS, Defendant Woodson. After that actual notice, she had a duty to investigate or otherwise act. Instead, WTPS, through outside counsel, engaged in a coverup and blamed Plaintiff, the victim, both which indicated that WTPS was deliberately indifferent to Commander Davis' misconduct in violation of Title IX.

## COUNT I

### Violation of Title IX 20 U.S.C. § 1681 et seq.

37. Plaintiff incorporates by reference all preceding paragraphs as if fully stated here.

38. Defendants WTPS, the Board, and the Superintendent had actual knowledge that Plaintiff experienced sexual assaults and harassment by WTPS teacher

Tharrell Davis because Plaintiff, on June 27, 2024, provided a detailed letter of said abuse. That sexual abuse caused physical and emotional injury to Plaintiff.

39. WTPS was obligated to investigate Commander Davis sexual assaults and harassment which are forms of sex discrimination prohibited by Title IX.

40. The individuals at WTPS with actual knowledge of Commander Davis' misconduct had the authority and ability to investigate and take meaningful action to address the misconduct, but failed to do so.

41. The sexual assaults and harassment by Commander Davis were severe, pervasive, and objectively offensive, and effectively deprived Plaintiff if his right to an education free from sexual abuse. It created a hostile educational environment at WTPS based on Plaintiff's sex.

42. By its acts and omissions, WTPS was deliberately indifferent to Plaintiff's reports of sexual assault and harassment, as well as the sexually hostile education environment in which Plaintiff suffered because of the District's failure to investigate.

43. As a direct and proximate result of Defendant WTPS's violation of Plaintiff's rights under Title IX, he has suffered and continues to suffer injuries, damages and losses, including, but not limited to emotional distress, fear, anxiety and trauma.

WHERFORE, Plaintiff respectfully demands judgment against Defendants awarding: Compensatory damages in amounts to be established at trial, including, as a consequence of the sexual assaults, harassment, retaliation and threats, and the Defendants' failure to conduct any investigation; and damages for past, present

and future emotional pain and suffering, ongoing mental anguish, loss of past, present and future enjoyment of life, and loss of future earnings and earning capacity. Injunctive relief to be determined at trial requiring Defendants to comply with Title IX. Such other and further relief as the Court may deem just and proper.

## COUNT II

### DISCRIMINATION IN VIOLATION OF THE FOURTEENTH AMENDMENT EQUAL PROTECTION CLAUSE UNDER SECTION 1983 (U.S. CONST., AMEND. XIV; 42 U.S.C. § 1983)

44. Plaintiff realleges and incorporates by reference all facts and allegations set forth in the preceding paragraphs.

45. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution gives Plaintiff the right to be free from invidious discrimination in classifications and other governmental activity.

46. Defendants are a state-sponsored educational institution and an employee of a state-sponsored educational facility which had a duty to give male and female students equivalent levels of protection.

47. Under the Equal Protection Clause of the Fourteenth Amendment, Defendant Woodson was obligated to address and investigate the known teacher-on-student sexual assaults of Plaintiff.

48. This count is against Defendant Woodson in her individual and official capacities.

49. Defendant Woodson had actual knowledge of WTPS teacher Tharrell Davis' repeated sexual assaults of Plaintiff because Plaintiff reported them to her, and they included physical and emotional injury.

50. Defendants failed to conduct any investigation into the sexual abuse on Plaintiff by WTPS teacher Tharrell Davis thereby discriminating against Plaintiff on the basis of sex.

51. At all relevant times, WTPS had unconstitutional customs or practices of (a) failing to appropriately investigate and respond to reports of teacher-on-student sexual harassment, including the sexual assault of Plaintiff; (b) failing to follow its policies prohibiting sexual assaults by teachers, and (c) failing to adequately train district staff and legal advisors on how to respond to sexual assault complaints and comply with Title IX.

52. WTPS, its Board and its Superintendent acted unconstitutionally in failing to follow its policies and Title IX with regard to Plaintiff.

53. At all relevant times, Defendant Woodson was a policymaker who implemented and enforced the District's unconstitutional customs or practices.

54. At all relevant times, Defendant Woodson had final policymaking authority regarding WTPS' sexual assault policy, including, but not limited to, its policy requiring compliance with Title IX.

55. At all relevant times, Defendant Woodson was responsible for enforcing the WTPS sexual assault policy and ensuring, among other things, prompt investigation of sexual assault allegations and compliance with Title IX.

56. At all relevant times, Defendant Woodson violated WTPS' sexual assault policy and Title IX by failing to investigate the sexual assaults of Plaintiff by WTPS teacher Tharrell Davis after being informed by Plaintiff of those assaults.

57. At all relevant times, Defendant Woodson acted with deliberate indifference to Plaintiff's report about Tharrell Davis' sexual assaults. She violated her duties and obligations under WTPS policy and Title IX requirements by shoving Plaintiff's report to outside legal counsel who also failed to comply with Title IX, and to law enforcement officials who had no interest in investigating any crime outside of the criminal statute of limitations. Outside counsel, rather than complying with Title IX, thwarted any investigation and attempted to intimidate Plaintiff into dropping his demands by demeaning him and insinuating that he was lying.

58. The customs and practices of Defendants for responding to Plaintiff's report of teacher-on-student sexual assault were so clearly inadequate that they give rise to a reasonable inference that the Defendants consciously condoned the sexual assaults by Commander Davis. This was confirmed by outside legal counsel's January 7, 2025 letter to Plaintiff refusing to investigate or even to admit that Commander Davis was employed by WTPS.

59. The failure of the Defendants to respond appropriately to Plaintiff's reports of sexual abuse by Commander Davis amounted to secondary victimization of Plaintiff.

60. WTPS' failure to adequately train Defendant Woodson and outside counsel about WTPS sexual assault polices and Title IX and how to recognize, address, and

15

investigate sexual harassment of its students caused Plaintiff to be deprived of equal protection.

61. If WTPS' training had been adequate, Defendant Woodson would have immediately launched an internal investigation of everything in WTPS files and records about Commander Davis, and fully investigated and corroborated Plaintiff's report of Commander Davis' sexual assaults.

62. Defendants failed to comply with WTPS and Title IX policies on sexual abuse by teachers against students.

63. Defendants were, therefore, deliberately indifferent to the sexual abuse perpetrated by their employee, Tharrell Davis, and they violated the clear language of Title IX.

64. As a direct and proximate result of Defendants' custom, policy, or practice of turning a blind eye toward Plaintiff's complaints about Tharrell Davis sexual assaults and discrimination of Plaintiff on the basis of sex, Plaintiff suffered damages and injuries for which Defendants are liable, including secondary victimization.

65. As a direct and proximate result of the Defendants' violation of Plaintiff's equal protection rights under the Fourteenth Amendment, Plaintiff has suffered and continues to suffer along with injuries, damages and losses, including, but not limited to: emotional distress, fear, anxiety and trauma; lost future earnings and earning capacity.

## COUNT III

## VIOLATIONS OF THE FOURTEENTH AMENDMENT DUE PROCESS CLAUSE UNDER SECTION 1983 (U.S. CONST., AMEND. XIV; 42 U.S.C. § 1983)

66. Plaintiff realleges and incorporates by reference all facts and allegations set forth in the preceding paragraphs.

67. The Due Process Clause of Fourteenth Amendment to the United States Constitution gives Plaintiff the right to due process in matters involving a governmental entity.

68. Defendants are a state-sponsored educational institution and a government employee which had a duty not to deprive Plaintiff of his right to due process under Title IX.

69. Defendants were, therefore, deliberately indifferent to Plaintiff's rights to due process under the law.

70. As a direct and proximate result of Defendants' custom, policy, or practice of turning a blind eye toward Plaintiff's due process rights, he suffered damages and injuries for which Defendants are liable, including secondary victimization.

71. As a direct and proximate result of Defendants' violation of Plaintiff's due process rights under the Fourteenth Amendment, Plaintiff has suffered and continues to suffer opportunities and benefits, along with injuries, damages and losses, including, but not limited to: emotional distress, fear, anxiety and trauma; lost future earnings and earning capacity.

## JURY DEMAND

72. Plaintiff respectfully demands a jury trial in this matter.

## RELIEF REQUESTED

73. For the foregoing reasons, Plaintiff respectfully request that the Court enter judgment against Defendants consistent with the relief requested herein, and for any and all other relief to which Plaintiff may be justly entitled, including actual damages, compensatory damages, court costs, and pre- and post-judgment interest.

74. Wherefore, Plaintiff respectfully request that this Court: (a) Enter judgment against Defendants in such amounts as will fully and adequately compensate Plaintiff for the damages they have suffered in amount to be determined at trial, which amount is not less than two million dollars. ($2,000,000); Award Plaintiff punitive damages against Defendants in an amount to be determined by a jury for Defendants' violations of the law and Constitution, which amount is not less than five million dollars ($5,000,000); Award Plaintiff pre-judgment and post-judgment interest; Award Plaintiff actual expenses of litigation. Award Plaintiff such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated this 5th day of May, 2025

Brett Kimberlin
8100 Beech Tree Road
Bethesda, MD 20817